UNITED STATES, Appellee

v

DANIEL W. TEE, Private First Class,
U. S. Army, Appellant

20 USCMA 406, 43 CMR 246

No. 23,440

March 12, 1971

Lieutenant Colonel Charles W. Schiesser argued the cause for Appellant, Accused. With him on the brief was Colonel George J. McCartin, Jr.

■■■■■■

*Captain James T. Harper* argued the cause for Appellee, United States. With him on the brief were *Colonel David T. Bryant, Lieutenant Colonel Ronald M. Holdaway, Captain Benjamin G. Porter,* and *Captain Richard L. Menson.*

## Opinion of the Court

DARDEN, Judge:

Having entered pleas of guilty, the appellant was convicted of violating Articles 134 and 92, Uniform Code of Military Justice, 10 USC §§ 934 and 892. Two specifications charged under the first Article alleged the wrongful possession of heroin and the unlawful introduction of this narcotic into his company at Fort Bragg, North Carolina. A single specification charged under Article 92 alleges:

"Specification: In that Private First Class Daniel Webster Tee . . . did . . . on or about 28 January 1970, violate a lawful general regulation, to wit: paragraph 4, XVIII Airborne Corps and Fort Bragg regulation 22–11, dated 22 April 1965, by wrongfully possessing in building number C–5823 an instrument that may be used to administer habit forming narcotic drugs, to wit: one each syringe."

Paragraph 4 of the above regulation provides:

"4. Narcotics: The use or possession of marijuana or any habit-forming narcotic drug at any time, unless prescribed by a physician, is prohibited. Unless specifically approved by proper authority, no person subject to Article 2, Uniform Code of Military Justice shall, except for household use or treatment of disease, possess or have in his custody or introduce into the area, installation, building, or squad room, at any time, any instrument or device that may be used to administer or dispense habit forming narcotic drugs or nervous system stimulants, such as, but not limited to, syringes and hypodermic needles, or ampoules designed for such drugs, either of the commercially manufactured type or of individual making."

That the appellant possessed heroin and a plastic syringe is shown by a stipulation of fact introduced during the trial as Prosecution Exhibit 2.

At the time of trial, defense moved to dismiss the specification of Charge II on the ground that it failed to state an offense. Relying on the use of the conjunctive in the paragraph 4 phrase "syringes and hypodermic needles," trial defense counsel argued that the regulation did not proscribe possession of a syringe without a hypodermic needle. The defense acknowledged, however, that with a needle affixed, this type of syringe is capable of injecting fluid into the veins.

Appellate defense counsel now pursue the same argument, contending that the regulation prohibits possession of syringes and hypodermic needles only when they are possessed or controlled together.

In United States v Chilcote, 20 USCMA 283, 286, 43 CMR 123 (1971), we noted that in a statute the disjunctive "or" and the conjunctive "and" are not equivalent and should not be so considered "unless reasonably necessary in order to give effect to the intention of the enacting body." Where legislative intent compels such a result, the normal meanings of "and" and "or" may be reversed. United States v Cumbee, 84 F Supp 390, 391 (D Minn) (1949); Golblatt v City of Chicago, 30 Ill App 2d 211, 174 NE2d 222, 225 (1961); Mills v Village of Milan, 68 Ill App 2d 63, 214 NE2d 915, 917 (1966); Duncan v Wiseman Baking Company, 357 SW2d 694, 698 (Ky) (1962); Manieri v Wagner, 33 Misc 2d 163, 224 NYS2d 152, 154 (1961). These rules of construction are applicable to regulations. United States v Baker, 18 USCMA 504, 40 CMR 216 (1969).

In this case we need not determine whether in "syringes and hypodermic needles" the "and" is used conjunctively. Other language of the regulation

makes abundantly clear that the listing of specific items covered is only illustrative and not exclusive. The regulation prohibits custody of "any instrument or device that may be used to administer or dispense." The listing of specific items is preceded by the words "such as, but not limited to." A syringe indisputably may be used in conjunction with a needle to administer or dispense habit-forming drugs.

To the suggestion that possession of a syringe alone may be for innocuous purposes, the answer is that the regulation excludes possession for household use or treatment of disease from its coverage. A person who possesses a syringe alone for household use or treatment of disease may show such a purpose as a defense if he is charged under the regulation. The interest of the armed forces in prohibiting wrongful narcotic use is enough reasonably to justify the transfer of this "obligation of going forward" to an accused. Here the regulatory presumption is valid, for "the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." Leary v United States, 395 US 6, 36, 23 L Ed 2d 57, 89 S Ct 1532 (1969); see also Tot v United States, 319 US 463, 87 L Ed 1519, 63 S Ct 1241 (1943); and United States v Gohagen, 2 USCMA 175, 7 CMR 51 (1953).

The language of the regulation in this case is similar to that considered by this Court in a series of opinions beginning with United States v Gohagen, supra. Possession of a syringe and hypodermic needle caused Gohagen to be charged with a breach of Circular Number 38, General Headquarters, Far East Command, APO 500, dated August 27, 1951. Paragraph 2 of that circular provided:

"No person subject to military law under Article 2 of the Uniform Code of Military Justice shall, except for household use or the treatment of disease, have on his person or in his possession or custody, at any time or place, without proper authority, any instrument or device that may be used to administer or dispense habit forming narcotic drugs or nervous system stimulants referred to in paragraph 1, such as, but not limited to, syringes and hypodermic needles, or ampoules designed for such drugs." [2 USCMA, at page 176.]

The Court decided in that case that the prosecution was not required to aver and prove that Gohagen's acts were outside the exceptions in the circular.

The same circular and the same issue were later considered and the issue resolved against the accused in United States v Christophe, 2 USCMA 375, 9 CMR 5 (1953); United States v Welborne, 2 USCMA 378, 9 CMR 8 (1953); and United States v Berry, 2 USCMA 374, 9 CMR 4 (1953). In the first two cases the Court affirmed convictions for the possession of hypodermic syringes. In the last instance, the Court affirmed a conviction for possession of a hypodermic needle. In none of these cases was the intent of the circular or the adequacy of the specifications setting out the charge questioned except for whether the prosecution had to allege that possession was not within a specific exception.

In the case before us a persuasive reason for interpreting paragraph 4 of the Fort Bragg regulation in a different manner is yet to appear. The object of paragraph 4 in the regulation here involved is the elimination of all habit-forming drugs and equipment for administering them from the confines of Fort Bragg. That purpose is "supported by the face of the instrument." United States v Baker, supra, at page 507. Plainly, *any* such instrument or device, singly or in combination, is prohibited under the terms of this regulation. We therefore affirm the decision of the United States Army Court of Military Review.

Chief Judge QUINN concurs.

Judge FERGUSON concurs in the result.